## THE STATE v. THE GODWINSVILLE AND PATERSON MAC-ADAMIZED ROAD COMPANY.

1. By the supplement of 1872 the defendant company was relieved, in constructing the road, only of the duty of bedding it with stone, not less than eight inches in depth.

2. A turnpike company is not indictable for neglecting to construct its road in the manner prescribed by its charter, but by the failure to maintain it in the condition of repair prescribed by its charter, the road becomes an indictable nuisance.  So long as the highway is kept in the proper condition for travel, the company cannot be called upon to respond in a criminal court upon an allegation that in some respect there has been a departure from or want of conformity to the mode of construction provided by its charter.

On case certified from the Passaic Oyer and Terminer.

Argued at November Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and SCUDDER.

For the state, *J. W. Griggs.*

*Contra, W. B. Gourley.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The defendant company was indicted by the grand jury of Passaic county, at the April Term, 1883. The indictment sets forth that said company was incorporated by an act of the legislature of this state, passed in 1867, by which the said company was vested with the power to lay out and construct a turnpike road between certain points therein specified ; that the said act expressly provided that " at least sixteen feet in width of the said turnpike should be sufficiently macadamized or bedded with stone, not less than eight inches in depth, and be faced with gravel or other material to make a solid, firm and even road at all seasons of the year."

That said company might, under certain conditions in said charter prescribed, erect gates across said road, and demand

State v. Godwinsville, &c., Road Co.

and receive tolls from travelers over said road at certain rates therein specified.

That said act also provided that if the said turnpike road should not be commenced by said company within three years and completed within six years from the passage of said act, then and in that case the said act should be void.

That in the year 1869 the said company laid out and constructed a road between the points aforesaid.

That in the year 1868 a supplement to the aforesaid act was passed by the legislature, whereby it was enacted that the time for completing the said road of said company, by macadamizing the same, should be extended to six years from the 2d day of April, 1868.

That in 1872 a further supplement was passed, whereby it was enacted that so much of the charter of said company as required " said road to be bedded with stone, eight inches in depth should be repealed."

That by virtue of the said acts of the legislature the said company, in 1869, erected gates across the said road, and demanded and received tolls from all persons riding, or driving horses, carriages or cattle over said road, and has continued so to demand and receive tolls.

That by virtue of said act it was the duty of said company, on or before the 2d day of April, 1874, to complete the said road by sufficiently macadamizing the same or bedding the same with stone for sixteen feet in width, in accordance with the provisions of the aforesaid acts of the legislature.

And the said indictment sets forth the offence imputed to the said company in the following language : " That the said company, disregarding its said duty, did not, at any time during said period of six years last above mentioned, and hath not at any time thereafter, completed said road of said company by sufficiently macadamizing the same or bedding it with stone, in accordance with the provisions of said acts above recited, but on the contrary, on the first day of June, A. D. eighteen hundred and eighty-one, and thereafter continuously until the taking of this inquisition, in the said township of

Manchester, have unlawfully omitted, neglected and refused to comply with the said provisions of said act, or to macadamize said road, or to bed the same with stone, and have, during all of the term last aforesaid, kept and maintained the said road in a soft, miry and rough condition, the said road not being macadamized or bedded with stone in any manner whatsoever, to the great *damage and common nuisance of all the citizens* of this state, contrary to the form of the statute in such case made and provided, and against the peace of this state, the government and dignity of the same."

The defendant demurred to this indictment, whereupon the Court of Oyer and Terminer certified to the Supreme Court the issue joined on demurrer, for the advisory opinion of said Supreme Court as to whether, upon the pleadings and under the charter of the said defendant company and the supplements thereto, judgment should be rendered for the state or for the defendant.

A prior indictment was found against the defendant company for illegally erecting and maintaining gates across the said highway. The state insisted that the company had not performed the conditions annexed to the grant of the franchise, and that such conditions were precedent to the right to erect the gates complained of.

This case was likewise certified to this court. Mr. Justice Magie delivered the opinion, in which it is held that the supplement of 1872 was intended either as an acknowledgment by the legislature that the conditions precedent to the right to exact tolls, imposed by the previous legislation, had been performed by the company, or that their performance had been waived. 15 *Vroom* 496. This is relied upon by the defence as an adjudication that the company, by the supplement of 1872, is wholly discharged from the duty of macadamizing the said highway. I do not understand that to be the effect of the decision.

The original charter of the company required that before tolls were taken "at least sixteen feet in width of the said turnpike should be sufficiently macadamized or bedded with

stone, not less than eight inches in depth, and be faced with gravel or other material, to make a solid, firm and even road at all seasons of the year."

The first section of the supplement of 1872 reads as follows : " That so much of the eighth section of the act to which this is a supplement as requires said road to be bedded with stone, eight inches in depth be and the same is hereby repealed." It seems very clear that this legislation does not relieve the company from the obligation to macadamize the highway. The eighth section of the charter requires : first, that at least sixteen feet in width of the road shall be macadamized or bedded in a certain way, that is, with stone, not less than eight inches in depth ; second, that when macadamized it be faced with gravel or other material ; third, that it be made solid, firm and even at all seasons of the year.

The first section of the supplement of 1872 simply dispenses with the necessity of " bedding with stone, eight inches in depth ; " it does not justify the inference that the entire duty cast upon the company by the prior law had been waived. On the contrary, the relief from a clearly defined portion of the previously imposed work, is a recognition of the obligation to perform the balance.

Full effect will be given to the first section of the supplement of 1872, by striking out of the eighth section of the charter the words " bedded with stone, not less than eight inches in depth."

The eighth section, thus amended, will read as follows : " That at least sixteen feet in width of the said turnpike shall be sufficiently macadamized and be faced with gravel or other material to make a solid, firm and even road at all seasons of the year." That language measures and defines the duty which rested upon the company after the passage of the act of 1872. It was held in the case in 15 *Vroom* that the road need not be completed as a condition precedent to the right to erect gates, but it will be seen, by reference to the opinion of the court, that the decision is based upon the second and third

sections of the act of 1872, and that it does not conflict with the view now taken.

The charge in the indictment is that the defendant has omitted, neglected and refused to macadamize said road, and has kept and maintained the same in a soft, miry and rough condition, to the great damage and common nuisance of all the citizens of the state. In these road matters all the forms of indictment contain the charge that the highway is a common nuisance. 3 *Chitty Cr. L.* 594; 2 *Whart.*, § 2426.

The obligations imposed upon this defendant company by its charter are recited in the indictment, and the allegation that the road has not been constructed in the required manner, and that by reason thereof the road is in a soft, miry and rough condition, is relied upon to establish the charge of nuisance. A common nuisance, says Hawkins, seems to be an offence against the public, either by doing a thing which tends to the annoyance of all the king's subjects, or by neglecting to do a thing which the common good requires. 1 *Hawk.* 360; 4 *Bl. Com.* 166; *Angell on Highways*, § 222.

Any defect that impairs the safety of the highway for the purposes of travel, or essentially interferes with its convenient use, is an indictable and actionable nuisance at common law. *Wood on Nuisances, p.* 267, § 324.

In *Angell on Highways*, § 259, it is said " that convenience and safety are the essential conditions of a well maintained highway, both at common law and by statute. Whether a given highway fulfills these conditions is a mixed question of law and fact, to be settled under proper instructions from the court. In determining this question it is necessary to consider the location of the road, and the kind and amount of travel over it. A road safe and convenient in the country might be unfit for the city."

In *Waterford Turnpike Co.* v. *People,* 9 *Barb.* 161, the indictment charged the defendant with nuisance in neglecting to make and maintain the road in a proper manner. The trial court refused to charge the jury that the defendant could not be convicted if the road was safe and passable. In reviewing

the case the Supreme Court said " that the charter of the turn-pike company was in the nature of a contract between the stockholders and the public. The former agree, in considera-tion of the tolls granted to them, to construct the road in a prescribed manner, and to keep it substantially in that condi-tion during the existence of the charter. A violation of that duty is punishable by indictment at common law. To consti-tute a nuisance it is not essential that the road should be unsafe or impassable. Any contracting or narrowing of a highway is a nuisance. Any obstruction left in it or omission to repair it, whereby it is less convenient for public use, falls within the same category."

*Howard* v. *North Bridgewater*, 16 *Pick.* 189, was an action on the case for damages for injuries to a horse from stones in the highway. The court said that an action would not lie unless the town was indictable, and held that in determining that question it was necessary to consider what duty was re-quired of the town in reference to reparation.

In *Proprietors of Quincy Canal* v. *Newcomb*, 7 *Metc.* 276, Chief Justice Shaw maintained the same view, saying that if the canal was not made according to the provisions of the act of incorporation it was a failure to perform a public duty, for which indictment would lie.

Our court of last resort has recognized this to be the correct rule. *Stults* v. *East Brunswick and New Brunswick Turnpike Co.*, 19 *Vroom* 596, was a suit brought to recover tolls alleged to be due from Mrs. Stults to the turnpike com-pany for travel by her over the road. She set up in her defence that the company had not complied with the require-ments of their charter in that they had not constructed the road in the manner therein prescribed and had not kept it in repair. Chancellor Runyon, in delivering the opinion of the court that this defence was inadmissible, said "that the com-pany was answerable for such delinquencies to the public at large in a public prosecution, and not to the defendant or any other individual," and in support of that doctrine he cited the case in 7 *Metc.* 276.

The legislature granted the right to take tolls upon the theory that it was necessary for the public that the road should be solid and firm. The condition in which the public convenience requires that the defendants' pike shall be kept can be settled only by reference to the charter. The failure to make it conform to that standard is nocuous and hurtful to the public. The public is thereby deprived of that which has been pronounced to be essential to the public good. The duty of maintaining and repairing highways and the extent and nature of that duty lie at the very foundation of the liability to indictment.

In *The Queen* v. *Inhabitants of Stretford*, 2 *Ld. Raym.* 1169, the indictment alleged that the highway was very muddy and so narrow that people could not pass without danger to their lives. Holt, Chief Justice, and Powell held the indictment naught for want of saying that the way was out of repair; and Powell said that the saying it was so narrow that the people could not pass was repugnant to its being the king's highway; for if it had been so narrow people could never have passed there time out of mind. It was not alleged nor did it appear that it was the duty of the inhabitants to keep the public way free from mud. In the absence of such an allegation, no breach of duty was shown. In the common law form it is sufficient to set forth the duty and show the neglect.

In *Rex* v. *Inhabitants of Hendon*, 4 *Barn. & Ad.* 628, the indictment alleged it to be the duty of the said defendants to repair and amend a bridge, and averred that the bridge "was out of repair." The defendants were convicted, and on motion in arrest of judgment the King's Bench refused the rule. When the manner in which a highway shall be maintained is not prescribed by statute the common law requires that it shall be convenient and safe. It becomes a public nuisance when and for the reason that by neglect it ceases to be maintained in the required condition. When, therefore, the legislature declares a turnpike to be necessary by the grant of a franchise to a company to construct it, with the right to exact tolls, under the duty

State v. Godwinsville, &c., Road Co.

of maintaining it in a specified manner, whether it is a nuisance or not must depend upon its conformity to the statutory standard. It seems unreasonable to hold that this company shall not be amenable to indictment for nuisance, unless the road is suffered to fall into such decay as would constitute a nuisance in case of an ordinary highway. It must not be understood that the mere neglect on the part of the company to make the turnpike conform in its construction to the exactions of its charter subjects it to indictment. Such is not the rule intended to be announced. It is only when, by reason of such want of conformity, the road has ceased to be solid, firm and even, as the charter commands, that the criminal prosecution can be resorted to. So long as the highway is kept in that state the company cannot be called upon to respond in a criminal court upon an allegation that in some respect there has been a departure from or a want of conformity to the mode of construction required by the charter. The duty to maintain the highway in a certain condition, and the neglect to perform that duty, constitute the criminal offence. The crime is committed when the dereliction of that duty exists. The charter of the defendant company does not provide any mode for redressing the injury to the individual or to the public, and if the defendant can continue to exact tolls without being liable to indictment for neglect of the obligation imposed by the statute, the public will be without adequate means of redress. Even if a penalty was provided in the charter, it would be no bar to indictment. 2 *Archb.* 989 ; *Simpson* v. *State,* 10 *Yerg.* 525 ; *Waterford* v. *People,* 9 *Barb.* 174.

The charge in the indictment " that the defendants, during all the time aforesaid, have kept and maintained the road in a soft, miry and rough condition," is a sufficient averment to show that it is a public nuisance. Admitting this to be the correct doctrine, the defendant cannot be called upon to answer to the state in this case. The indictment alleges that it was the duty of the company to complete the macadamizing of the turnpike in the manner aforesaid, within six years from the 2d day of April, 1868, and that it was not done within the

said time or at the time of finding the indictment. To this specification the defendant can make two sufficient answers:

First. The indictment was found in 1883, and consequently more than two years had then elapsed after the offence charged had been committed. It does not appear, from anything averred in the indictment, that the duty to complete continued after the expiration of six years, or that the defendant had a right to complete it after six years. On the contrary, it is expressly charged in the indictment that unless it was completed within six years the said charter should be void. The charter being the only authority for doing the work, if the charter became void the right to do the work ceased. Consequently the offence set forth is barred by the statute of limitations.

Secondly. The averment that the company has failed to construct the turnpike in the prescribed manner does not, as has been before stated, authorize a resort to criminal procedure, in the absence of the further allegation that it was the duty of the company to maintain the road in a certain state of repair, and that in consequence of neglect of that duty it had fallen out of repair.

The indictment alleges that the defendants have, during all the time aforesaid, kept and maintained the road in a soft, miry and rough condition, but there is an entire absence of averment to show that they were under any duty or obligation to keep the road in repair. Failure to repair is not the offence charged in the indictment.

The Oyer and Terminer should be advised that upon the pleadings certified judgment should be rendered for the defendants.